IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KRIS SARAYN KOLLYNS, (FORMERLY # 14561), A/K/A KRISTOPHER S. KOLLINS, A/K/A JOHN WAYNE TODD, A/K/A JOHNNIE W. TODD,<br>          Plaintiff,<br><br>vs.<br><br>GEORGE GINTOLI; DR. RUSSELL HUGHES; BRENDA YOUNG-RICE; DR. BEVERLY WOODS; DR. PAMELA M. CRAWFORD; AND SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH (FOR INJUNCTIVE RELIEF),<br>          Defendants. | Civil Action No. 3:04-2552-JFA-JRM<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff filed this action under 42 U.S.C. § 1983 ("§ 1983") on August 12, 2004.[1] He[2] has been involuntarily committed to the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act ("SVP Act"), S.C. Code Ann. § 44-48-10 et seq. Plaintiff is in the Behavioral Disorders Treatment Program ("BDTP") and is housed in the Edisto Unit at the Broad River Correctional

---

[1] Plaintiff filed both his Complaint and Amended Complaint on August 12, 2004. Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] The Court recognizes that Plaintiff now prefers to be referred to with female pronouns. However, because Plaintiff is a biological male, the Court has decided to use male pronouns.

Institution of the South Carolina Department of Corrections. Defendants filed a motion for summary judgment on November 15, 2004. They filed a supplemental memorandum in law in support of their motion for summary judgment on November 16, 2004. Plaintiff, because he is proceeding pro se, was advised on November 16, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a memorandum in opposition to summary judgment and an affidavit on December 21, 2004.[3]

## DISCUSSION

Plaintiff alleges that he suffers from Gender Identity Disorder ("GID") (also known as gender dysphoria or transsexualism)[4] and that Defendants refuse to provide him with medical and psychological treatment for this condition.[5] Defendants argue that they are entitled to summary judgment because: (1) Plaintiff cannot state a claim pursuant to the Eighth Amendment because he is not incarcerated; (2) Plaintiff's Fourteenth Amendment claim fails because professional judgment has been exercised in regard to his alleged GID; (3) Defendants are entitled to Eleventh

---

[3] Plaintiff filed a response to Defendants' answer on November 10, 2004. The undersigned has also considered this response in preparing this report and recommendation.

[4] The Supreme Court has explained that transsexuals have "'[a] rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex,' and … typically seek[ ] medical treatment, including hormone therapy and surgery, to bring about a permanent sex change." Farmer v. Brennan, 511 U.S. 825, 829 (1994) (quoting American Medical Association, Encyclopedia of Medicine 1006 (1989)).

[5] In the materials submitted in opposition to summary judgment, Plaintiff appears to assert additional claims concerning his religious rights and treatment by staff members (some of which are not defendants to this action). These allegations were not raised in the Complaint and are not part of this action.

2

Amendment immunity in their official capacities; and (4) Defendants are entitled to qualified immunity in their individual capacities.

    1.    <u>Treatment Decisions/Due Process</u>

Plaintiff alleges that Defendants violated his Eighth[6] and Fourteenth Amendment rights by denying him medical and psychiatric treatment for GID and failing to administer testing dealing with GID. He alleges that Dr. Crawford withheld some of his medical and psychological history, including his record of GID, from her report of her psychiatric evaluation.[7]

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under the SVP Act bear some reasonable relation to the purpose for which persons are committed. <u>See</u> <u>Seling v. Young</u>, 531 U.S. 250, 265 (2001); <u>Youngberg v. Romeo</u>, <u>supra</u>.

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. <u>Youngberg</u>, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only

---

[6] Plaintiff's claims, because he is an involuntarily committed mental patient, should be evaluated under the Fourteenth Amendment and not the Eighth Amendment. <u>See</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982).

[7] In his December 21, 2004 affidavit, Plaintiff also alleges that Dr. Crawford does not have a license to practice psychiatry in South Carolina. He bases this on a letter from the South Carolina Department of Labor, Licensing and Regulation to another involuntarily committed individual stating that Dr. Crawford has never been licensed as a psychologist, in South Carolina. Dr. Crawford, however, provides that she holds a medical degree and is board certified in both Psychiatry and Forensic Psychiatry. Crawford Aff.

when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. Id. at 322.

To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints. Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001). While courts have not adopted a consistent standard, there is agreement that the professional judgment standard requires more culpability than mere negligence. Compare Yvonne L. v. New Mexico Dep't of Human Servs., 959 F.2d 883, 894 (10th Cir. 1992)(doubting whether "there is much difference" between the deliberate indifference standard and the Youngberg standard), with Doe v. New York City Dep't of Soc. Servs., 709 F.2d 1135, 1146 (3rd Cir. 1990)("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct."); see also Shaw v. Strackhouse, 920 F.2d 1135, 1146 (3d Cir. 1990)("professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").

Plaintiff fails to show that Defendants did not meet the professional judgment standard. Dr. Crawford reviewed Plaintiff's medical and other records and personally examined Plaintiff over a two day period. Dr. Crawford specifically researched Plaintiff's claims of GID and determined that he did not have this disorder. She did, however, find that he has a severe personality disorder with both antisocial and narcissistic features. His antisocial features were found to consist of deceitfulness as indicated by repeated lying, use of aliases to con others for

4

personal profit or pleasure, reckless disregard for the safety of himself or others, consistent irresponsibility as indicated by repeated failure to sustain consistent work behavior, and lack of remorse. His narcissistic features included a grandiose sense of self-importance and exploitation of others to his own ends. Contrary to Plaintiff's claims that Dr. Crawford withheld information from her report, Dr. Crawford states that she reviewed 99 different sources of information in her evaluation, including Plaintiff's 1963 records from Central Ohio Psychiatric Hospital and his 1965 Ohio State University Hospital Report. Crawford Aff. Dr. Wood, the Director of Professional Services for Columbia Behavior Health Services, states she never assessed Plaintiff or met him, but has received correspondence from him. She states that she consulted Plaintiff's treating physician and understands that he suffers from a variety of sexual disorders including pedophilia and voyeurism, but has not been diagnosed with GID and does not currently suffer from the condition.

Further, as long as Plaintiff's diagnosis and treatment decisions are made by an appropriate medical professional, due process is violated only if the decision is such a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." United States v. Charters, 863 F.2d 302, 312 (4th Cir. 1988)(en banc). Plaintiff fails to show that Dr. Crawford's diagnosis varied from accepted professional judgment, practice, or standards. Plaintiff appears to argue that Dr. Crawford's diagnosis varied because he was diagnosed with GID in the past. Plaintiff also appears to argue that he should be treated according to "the Harry Benjamin International Gender Dysphoria Association's Standards of Care for Gender Identity Disorders, Sixth Version" that he attached to his response to Defendants' Answer. He has presented no medical opinions to show

5

that he has been diagnosed with GID[8] or that he should be treated according to the referenced standard of care. Plaintiff fails to show that Dr. Crawford's diagnosis or Defendants' treatment of him is a substantial departure from accepted professional standards.

   2.   <u>Immunity</u>

Defendants argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes,"

---

[8] Plaintiff appears to argue that Dr. Crawford has failed to provide him with copies of certain of his medical records from prior care providers. There is no indication that Dr. Crawford was required to do this or that Plaintiff cannot request the medical records himself from the medical providers.

but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

    3.    State Claims

It is unclear whether Plaintiff is also asserting claims under state law. As Plaintiff fails to state claims under federal law (as discussed above), only potential state law claims would remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

## CONCLUSION

Based on a review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 20) be granted.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

June 9, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Magistrate Judge's Report and Recommendation**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201